UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORRA ESPEY,                                        Case No. 13-14859

              Plaintiff,                       Linda V. Parker
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 13)**

**I.     PROCEDURAL HISTORY**

    **A.     Proceedings in this Court**

On November 25, 2013, plaintiff Lorra Espey filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Sean F. Cox referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for disability

insurance benefits.  (Dkt. 2).  This matter was subsequently reassigned to District

Judge Linda V. Parker.  (Dkt. 12).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 8, 13).

**B.     Administrative Proceedings**

Plaintiff filed the instant claim for disability and disability insurance benefits (DIB) on September 18, 2010, alleging that she became disabled beginning July 24, 2010.  (Dkt. 6-5, Pg ID 190-91).  The claim was initially disapproved by the Commissioner on December 28, 2010.  (Dkt. 6-3, Pg ID 126). Plaintiff requested a hearing and on May 3, 2012, plaintiff appeared, with counsel, before Administrative Law Judge (ALJ) James F. Prothro, who considered the case de novo.  (Dkt. 6-2, Pg ID 63-123).  In a decision dated August 17, 2012, the ALJ found that plaintiff was disabled from July 24, 2010 to May 1, 2012, but that medical improvements occurred on May 2, 2012, after which plaintiff was not disabled.  (Dkt. 6-2, Pg ID 41-58).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 26, 2013, denied plaintiff's request for review. (Dkt. 6-2, Pg ID 24-28); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born in 1958, was 52 years of age on the alleged disability onset date.  (Dkt. 6-2, Pg ID 190).  Plaintiff had past relevant work experience as a packager, material handler, and utility worker.  (Dkt. 6-2, Pg ID 52).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through the date of the hearing.  (Dkt. 6-2, Pg ID 48).  At step two, the ALJ found that, from July 24, 2010 through May 1, 2012, plaintiff's status post lumbar laminectomy and discectomy, status post lumbar fusion surgery, low back pain, status post bilateral release of carpal tunnel, right trigger thumb release, bilateral shoulder surgery, depression and obesity were "severe" within the meaning of the second sequential step.  (Dkt. 6-2, Pg ID 48-49).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 6-2, Pg ID 49).  The ALJ then found that plaintiff was disabled from July 24, 2010 to May 1, 2012 because of multiple surgical procedures, treatment and recovery.  (Dkt. 6-2, Pg ID 49-53).

The ALJ further found that medical improvements occurred on May 2, 2012, after which plaintiff had the residual functional capacity ("RFC"):

to perform medium work as defined in 20 CFR

3

> 404.1567(c) except that she can lift a maximum of
> twenty-five pounds; she must avoid repetitive bending,
> twisting, and lifting, and she must have a sit/stand
> option. She can have occasional contact with the public,
> coworkers, and supervisors, and is prohibited from fast-
> paced or quota-based jobs.

(Dkt. 6-2, Pg ID 53-57). At step four, the ALJ found that plaintiff was still unable

to perform her past relevant work, because the exertional demands of those

positions exceeded plaintiff's RFC. (Dkt. 6-2, Pg ID 57). At step five, the ALJ

denied plaintiff benefits because she could perform a significant number of jobs

available in the national economy. (Dkt. 6-2, Pg ID 57-58).

### B.    Plaintiff's Claims of Error

Plaintiff's brief begins with a recitation of the standards to be applied in

evaluating the credibility of pain complaints. Plaintiff then moves on to the

Commissioner's obligation to prove that she was capable of other work, given that

she could not perform her past relevant work. Plaintiff contends that the

Commissioner failed to satisfy this burden of proof because the hypothetical

question posed to the vocational expert and on which the ALJ relied did not

accurately describe plaintiff's limitations in all relevant respects. Plaintiff notes

that the ALJ found plaintiff to have severe limitations, but that plaintiff's

symptoms are not so severe as to prohibit her from performing all work activities.

(Tr. 23, 32). Plaintiff further states that she testified that she "can't bend, lean, or

twist," and that she has difficulty taking care of her personal needs.  She testified that her boyfriend "has to help [her] with [her] bath" and that she "can't reach in places" and that "he does a lot of cooking for me, and cleaning."  (Tr. 72).  She stated she is unable to go dancing or bowling and that she has trouble sleeping, only getting "three, four hours" due to her thoughts and that she "just can't sleep." (Tr. 72-73).  She further testified that she can sit for "five minutes, three minutes," "walk for five minutes," she does not "lift anything over 10 pounds," and her condition is aggravated by "sitting, standing, [and] walking."  (Tr. 74-75).

Plaintiff argues that her medical records support her impairments after May 2, 2012, citing a "To Whom It May Concern" letter dated May 3, 2012 which states that plaintiff is being counseled for "her anxiety, depression and ADD symptoms" and that "she struggles dealing with her life problems and not physically being able to attend work[.]" (Tr. 493).   An April 23, 2012 work status slip provides restrictions of "no use of affected arm" and an April 23, 2012 medical record provides that plaintiff "complains of continued pain as well as stiffness" and that "she does not feel like she has had much improvement in her pain."  (Tr. 494-95).  Plaintiff contends that her testimony is backed up in the medical record and "for the ALJ to indicate that [plaintiff's] testimony is not credible and that her impairments had improved enough to not preclude work is clearly in error."  (Dkt. 8, Pg ID 649).

5

Plaintiff further asserts that the vocational expert testified, in response to the hypothetical questions posed by the ALJ, that he believed plaintiff could perform work as an inspector and office helper.  Plaintiff complains that the vocational expert failed to provide DOT codes for the identified positions at the hearing, and that the ALJ also failed to provide any codes in his decision.  Plaintiff thus contends that it is impossible to determine if these jobs and the alleged exertional level and numbers the vocational expert provided are in fact accurate.  Plaintiff requests that the matter be remanded so that DOT codes can be provided by vocational expert testimony.  Plaintiff further argues that the hypothetical question posed to the vocational expert did not represent plaintiff in every relevant aspect. In response to a hypothetical including "sitting at 60 degrees [which] would be sitting in more of a reclining position," the vocational expert testified that "competitive work, work at reasonable numbers does not exist."  (Tr. 93).  In response to a hypothetical involving being "off task more than 10 percent of the time in any given workday," the vocational expert testified "I do not believe that meets competitive standards."  (Tr. 94).  Plaintiff argues that because the ALJ failed to provide and follow a hypothetical question that represented plaintiff in every aspect, the vocational expert's testimony should not constitute substantial evidence.

Next, plaintiff recites that standard applicable to the assessment of a treating

physician opinion.  After reciting these standards, plaintiff asserts that "[i]t is clear from the medical evidence of record and [plaintiff's] testimony that her ability to engage in substantial gainful activity is severely limited as a result of her physical conditions.  As such, [plaintiff] would only be capable of engaging in substantial gainful activity only by enduring great pain and should, therefore, be found disabled even after May 2, 2012 in accordance with the Social Security Rules and Regulations."  Plaintiff therefore requests that this Court reverse the ALJ's decision and remand this case with an award of benefits, or, in the alternative, remand this case for further proceedings.

### C.    The Commissioner's Motion for Summary Judgment

According to the Commissioner, because plaintiff's brief simply recites boilerplate case law and only averts to potential issues in a perfunctory and skeletal manner, plaintiff has failed to brief her claim with sufficient specificity to avoid waiver.  The Commissioner asserts that "[issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996), and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 539 n.2 (6th Cir. 2002) (quoting *McPherson*).  The Commissioner

also points out that this Court found that the claimant waived a similar argument

in *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013).

The Commissioner asserts that after some boilerplate language unconnected to the

facts of this case, plaintiff argues that "[h]er testimony was backed up in the

medical record and for the ALJ to indicate that [her] testimony after May 2, 2012

is not credible is clearly in error."  The Commissioner argues, however, that

plaintiff does not cite to any evidence in the medical record to support this

conclusory argument.  Despite plaintiff's recitation of her testimony, the

Commissioner contends that she fails to explain why it was erroneous for the ALJ

to decline to accept it.  According to the Commissioner, plaintiff seeks to have this

Court develop her argument for her, but a "skeletal 'argument,' really nothing

more than an assertion, does not preserve a claim." *United States v. Dunkel*, 927

F.2d 955, 956 (7th Cir. 1991).

The Commissioner continues that, in any event, the ALJ's credibility

finding, which is entitled to deference, is well-supported. Without waiving her

claim of waiver, the Commissioner discusses the reasons the ALJ chose to find

plaintiff less than fully credible.  The Commissioner begins, as an initial matter,

that the ALJ did not summarily reject all of plaintiff's allegations.  To the contrary,

the ALJ found plaintiff disabled from July 24, 2010, to May 1, 2012. (Tr. 28). The

ALJ recognized that plaintiff's status post lumbar laminectomy and discectomy,

status post lumbar fusion surgery, low back pain, status post bilateral release of carpal tunnel, right trigger thumb release, bilateral shoulder surgery, depression, and obesity were severe impairments because they imposed more than minimal limitations on her ability to perform basic work activities. (Tr. 23-24). The ALJ evaluated the medical and other evidence related to plaintiff's severe and nonsevere impairments for the entire relevant period, and found that medical improvement related to plaintiff's ability to work occurred as of May 2, 2012. (Tr. 24-27, 30-32). After determining that plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments, the ALJ assessed plaintiff's RFC–that is, the most she could still do despite her limitations. (Tr. 30). According to the Commissioner, the ALJ's RFC findings reflects that the ALJ credited many of plaintiff's complaints to the extent that they were supported by the record. However, as detailed below, the ALJ reasonably declined to accept plaintiff's allegations of symptoms of disabling pain.

The ALJ noted that the objective evidence did not support the severity of plaintiff's allegations. (Tr. 30-32). The Commissioner acknowledges that while objective evidence is not the only factor relevant to determining the credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ when evaluating the credibility of a plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in

making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The ALJ noted that treatment notes from May 2012 indicated that plaintiff was significantly improved following her back surgery in February and was not experiencing any significant radicular symptoms in her legs. (Tr. 31-32, 598). The ALJ noted that a physical exam showed that plaintiff was not in acute distress, could transition from sit to stand easily, and had a normal gait; the exam also showed that the strength and sensation in plaintiff's back and legs was normal, and that x-rays of plaintiff's back were normal. (Tr. 31-32, 598).

The Commissioner continues that, as required by the regulations, the ALJ discussed other evidence of record in addition to the objective medical evidence. For instance, the ALJ considered the extent to which plaintiff had undergone treatment for her various problems and noted that plaintiff testified that she was not treating her carpal tunnel or right trigger thumb.  (Tr. 31, 81). The ALJ also noted that plaintiff testified that she was in therapy and group therapy for her depression but was no longer taking medication for her symptoms.  (Tr. 31, 70). The Commissioner argues that the ALJ's decision reflects that he did not reject plaintiff's statements about the intensity and persistence of her symptoms solely because the objective medical evidence did not support her statements, but rather considered other relevant factors as required by 20 C.F.R. § 404.1529(c)(3). The

Commissioner contends that while plaintiff may disagree with the ALJ's credibility assessment, she has failed to demonstrate a basis for overturning the finding, especially in light of the great weight and deference that an ALJ's credibility finding is entitled to on review.

The Commissioner further contends that plaintiff recites medical evidence related to her subjective complaints of symptoms related to her depression, but does not explain how this evidence suggests limitations greater than those in the ALJ's RFC assessment. Plaintiff points to a work status form completed in April 2012 in which she was restricted from using her right arm for four weeks. According to the Commissioner, however, the ALJ noted that treatment notes from April 2012, two weeks after plaintiff's right shoulder surgery, indicated that plaintiff was recommended to begin physical therapy.  (Tr. 31, 495). *See Jordan v. Astrue*, 2009 WL 2900280, at *2 (W.D. Ky. Sept. 3, 2009) (affirming ALJ's adverse credibility finding where claimant treated conservatively with physical therapy and trigger point release following a car accident). The Commissioner argues that because the ALJ's credibility finding is supported by substantial evidence, it should not be disturbed.

The Commissioner observes that plaintiff also broadly cites to the rules governing how ALJs must review medical opinion evidence, but that she never develops any argument as to what opinion evidence she alleges that the ALJ

11

improperly weighed. Accordingly, the Commissioner concludes, any argument related to opinion evidence should be deemed waived.

Plaintiff argues that the ALJ's hypothetical questions to the vocational expert did not account for all of her limitations. The Commissioner argues, however, that as discussed above, plaintiff fails to show what additional limitations she had that were not included in the ALJ's finding that she had the RFC to perform a reduced range of medium work. The ALJ provided a detailed explanation of plaintiff's RFC and relied on the vocational expert's testimony to find that, beginning May 2, 2012, plaintiff was capable of performing jobs that existed in significant numbers. (Tr. 32-33, 88-92). The Commissioner notes that plaintiff also argues that remand is necessary because the vocational expert did not provide codes from the *Dictionary of Occupational Titles* (DOT) as part of his testimony. But, the Commissioner argues, plaintiff is incorrect. *See Fuston v. Comm'r of Soc. Sec.*, 2012 WL 1413097, at *16 (S.D. Ohio Apr. 23, 2012) (there is no authority for contention "that the VE's failure to relate the corresponding DOT numbers when providing testimony . . . requires a reversal and award of benefits. Indeed, case law supports the contrary position 'that there is no requirement that a VE provide reference numbers for the jobs he/she identifies'") (citing cases). Social Security Ruling (SSR) 00-4p requires an ALJ taking testimony about the requirements of a particular job to ask whether the vocational

12

expert's testimony is consistent with the DOT and to obtain a reasonable explanation for any apparent conflict. An ALJ is under no obligation to investigate the accuracy of the vocational expert's testimony beyond the inquiry mandated by SSR 00-4p. *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)). The Commissioner argues that the ALJ here satisfied his obligation under SSR 00-4p by confirming that the vocational expert's testimony was consistent with the DOT. (Tr. 94). *See Lindsley*, 560 F.3d at 606. The Commissioner further notes that if plaintiff wanted DOT numbers, he could have asked the vocational expert during his opportunity to cross-examine the expert at the hearing. *See Beinlich*, 345 Fed. Appx. at 168. The Commissioner concludes therefore that this Court should find that the ALJ did not err in concluding that plaintiff was not disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

15

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do

basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

18

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

　　　If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.
*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where
substantial evidence supports the ALJ's decision, it must be upheld.

## C.　　Analysis and Conclusions

　　　While the undersigned has thoroughly reviewed the record evidence, the
parties' submissions, and the ALJ's decision, plaintiff cannot simply make the
bald claims that the ALJ erred, while leaving it to the Court to scour the record to
support this claim.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.
1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some
effort at developed argumentation, are deemed waived.  It is not sufficient for a
party to mention a possible argument in a most skeletal way, leaving the court to ...
put flesh on its bones.") (citation omitted); *Crocker v. Comm'r of Soc. Sec.*, 2010
WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the

lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") (citation omitted).  In the view of the undersigned, all of plaintiff's arguments are wholly insufficient and undeveloped.  Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error of any sort.[1]  As explained above, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

Moreover, the Commissioner convincingly establishes that the ALJ's RFC is well-supported by substantial evidence and that plaintiff's credible limitations were accommodated in the RFC.  Plaintiff simply fails to explain how the ALJ's RFC does not accommodate her credible limitations, as found by the ALJ, which

---

[1] As noted by the Commissioner and by the undersigned in other cases involving plaintiff's counsel, plaintiff's counsel regularly presents briefs with woefully underdeveloped arguments. *See e.g.*, *Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1 n. 1 (E.D. Mich. Mar. 24, 2014) (Rosen, C.J.).  Judge Rosen suggested that sanctions, including a referral for disciplinary proceedings would be in order for future similarly deficient filings.  Judge Rosen's opinion was released on March 24, 2014.  Plaintiff's brief in this case was filed on March 11, 2014, 13 days before the *Fielder* decision.  Thus, as in other recent decisions, the undersigned declines to recommend sanctions at this time, given that plaintiff's counsel did not have notice of Judge Rosen's opinion in *Fielder* when the brief in this case was filed.  *See e.g.*, *Greason v. Comm'r of Soc. Sec.*, 2014 WL 6861315 (E.D. Mich. Dec. 31, 2014); *Brewer v. Comm'r of Soc. Sec.*, 2014 WL 6750596 (E.D. Mich. Dec. 1, 2014).

20

are fully supported by substantial evidence in the record.  Moreover, simply

because plaintiff suffers from a certain condition or carries a certain diagnosis

does not equate to disability or a particular RFC.  Rather, the residual functional

capacity circumscribes "the claimant's residual abilities or what the claimant can

do, not what maladies a claimant suffers from–though his maladies will certainly

inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r*

*of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment

may or may not affect his or her functional capacity to work.  One does not

necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480,

at *5 (E.D. Mich. July 14, 2004).  "The regulations recognized that individuals

who have the same severe impairment may have different [residual functional

capacities] depending on their other impairments, pain, and other symptoms."

*Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20

C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which

plaintiff may have suffered does not necessarily establish any functional limitation

or disability.  Here, plaintiff seemingly argues that merely because she suffers

from certain impairments, she must be disabled, or continue to be disabled.  This is

not so.  And, significantly, plaintiff has failed to produce medical evidence or an

opinion showing that she had greater limitations than the ALJ found.  *See Maher*

*v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1987) (citing

21

*Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.")).

Further, as the Commissioner correctly argues, the vocational expert's failure to specify DOT codes for the positions identified is not fatal to the ALJ's decision. The ALJ was thorough in determining a residual functional capacity for plaintiff, and applied that capacity in his discussion with the vocational expert about what kinds of jobs plaintiff could perform. The vocational expert then described types of jobs plaintiff could perform, and testified that such jobs existed in significant numbers in the regional and state-wide economy. This satisfied the Commissioner's burden in this regard, despite the failure of the vocational expert to tie his job descriptions to the DOT. Neither the ALJ nor the vocational expert was bound by the DOT in making a disability determination. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *see also Wilson v. Comm'r of Soc. Sec.*, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011) (holding the ALJ did not err in relying on VE testimony as to available occupations for plaintiff, even where the VE did not state the numeric codes assigned to the occupation and when all but one of the occupations are described in the DOT as requiring higher exertion and skill levels than plaintiff's sedentary and unskilled levels, because the Social Security regulations do not require the VE to rely on classifications in the DOT). Accordingly, the Commissioner's decision is

supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 18, 2015                         s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 18, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                                s/Tammy Hallwood
                                                Case Manager
                                                (810) 341-7887
                                                tammy_hallwood@mied.uscourts.gov